I'm Joseph Walsh appearing for the appellant Vincent Anthony Jones and I'd like to reserve two minutes of rebuttal if I may your honor. The first issue is whether there was probable cause to search appellant's car. Appellant was suspected of robbing a farmers and merchants bank in Long Beach and stealing $1,500 while using a note threatening to use a gun if money was not turned over and the teller saw that there was a what she thought to be a gun in his waistband. An hour later six miles away appellant was arrested on the street after having gone into a second farmers and merchants bank. The tellers in the bank believed that he looked like the person that was on a wanted poster who was involved in several other bank robberies in the Long Beach area and the tellers told the police that mr. Jones had entered and left the bank and then he was arrested on the street a short distance away in an alley adjacent to the bank. When appellant was arrested car keys were taken from him and the officers then began looking for his car which wasn't apparently in in that location in fact it was the other side of an apartment building about two blocks away. They did locate it by using the key fob which had the car make a chirping sound once the car was located. They found the car searched it and found $1,500 which was bait money taken in the first robbery. Appellant then moved to suppress the evidence on the grounds there was no probable cause to search the the vehicle. The district court denied the motion saying that there was probable cause to search because mr. essentially mr. Jones had keys and there was a car in the vicinity of the location. Our argument is that there was no probable cause to search because there was no connection of the car to the crime of bank robbery that he was arrested for. There was no evidence. So they said they could only search the car if they saw him dash out of the bank jump in the car and drive away. They could only our position is they can only search the car if they had reasonable suspicion to believe that a car was involved in the crime. Hadn't there been a robbery earlier in the day about an hour earlier? It's an hour earlier and there was. Was it down the block? It was six miles away. Do you think it's a reasonable inference that he might have used a car to get from one bank to the next? Well not in this case because. When he's found he has a set of keys in his hand? Not in this case because no one at the first bank robbery saw Jones either get in a car or get out of car or drive away in a car so there was no. Why is that required? Why is seeing the car required? Well for probable cause there has to be a nexus between. He had the same note that was used in both in his pocket in both robberies. He had car keys and he didn't have any money. So logically it's on him and there was reason to believe he had been involved in the first robbery and here he was further away involved in the second robbery. Why wouldn't you reasonably assume there was a car? Because no one at the first bank at 2.30 saw him in a car either getting out of a car or driving away from a car. There was no car connected based on the evidence that was conducted by the FBI. Why is that necessary to the reasonable inferences? Why is that link necessary? Because if the police are going to search a car they have to have reasonable suspicion that the evidence of the crime is in the car. And in order to have that there has to be some link between the car and the crime which is absent here. I thought there was some evidence in the record that one of the earlier banks he'd been observed, somebody had observed him casing the location. He was driving his Lincoln automobile. Yes but at the evidentiary hearing that was held it was not his Lincoln's automobile. It was a Lincoln of a different model that had a license plate that was completely different. There was evidence that they saw him in a vehicle. Well they never identified him as being the person in that earlier robbery or earlier casing. They said that it was reported to the FBI that there was a casing of the bank and a Lincoln was involved. A person fitting his description, right? No there wasn't a description. In fact the issue was whether the car was connected and the car had a completely different license plate and it was a completely different model. And I think that that was completely discounted by the district court after hearing that testimony. That the evidence concerning his relationship to a particular car at a prior occasion had no relationship to the car that they found on the street on the day that he was arrested. So you don't think it's a reasonable inference that the facts here are insufficient to support a reasonable inference that the knowledge that they had that he had committed a bank robbery, that somebody had information to lead them to believe that he was responsible for the earlier robbery that day, six miles away, the keys in his hand, a note in his pocket, that that was insufficient to support an inference that he had used a vehicle to get from one to the other. He took the bus or he walked. Or he could walk. And the reason is because at the location of the second robbery it was clear he walked in and he walked out and he wasn't, he didn't drive there in a vehicle, there was no one seeing him drive there in a vehicle, there was no vehicle parked outside the bank, and then when he was walking away there was no vehicle in sight. And so, and then the Now what if we assume that both of those are reasonable inferences? He walked six miles to the second bank. Or he drove six miles. And the district court took, drew the one that he used a vehicle. Don't, aren't we obligated to uphold the district court's finding in those circumstances? Well, we would argue against that. And the case that we relied on was a Tenth Circuit case of United States v. Edwards. And that's where, that was the case where a man and his girlfriend were, were in a bank and a dye pack exploded and they came out and they were arrested and they were placed in a police vehicle. And then when the officers went in, they found out the bank hadn't been robbed. And, but nevertheless, they arrested him because of the dye pack exploding. They suspected that he had perhaps robbed some other bank. And his car was parked in the parking lot and it was searched and they found further evidence of another bank robbery and that, and that the Tenth Circuit held that, that since his going in and out of that bank was not, no crime had been committed, that there was no probable cause to then go find his car. And conduct the search of that car. And, and we feel that the, that the case of Edwards is, is very close to the factual circumstances in this case, because when he went into the second Farmers and Merchants Bank, he walked in, stood in the teller line and then walked out. So, so they hadn't, there was no crime committed at that second location. He didn't dash out of the bank and jump into a car and speed away. Correct. He just, he just walked. He just moseyed on out of the bank and began walking down the street. And so our argument is that there has to be some sort of nexus between the car and the crime, as opposed to him being the link between the car, the crime, and he can't serve as the link. That's what you're saying. Right. And I think that the district court was saying the link was that he had car keys, but, but that was on a car, on a key ring that had his, his car keys, his, his home keys. I mean, everyone has car keys in their pocket, whether they're driving a car that day. And that was the argument. But doesn't that indicate that there's a car then, if you have a car key? That he owns a car. But, but, but our argument is there was no link between the car and the crime. There's no, there was no connection between what he was being arrested for, what the police were detaining him for, and this particular car. Well, I mean, he doesn't have to dash away from the crime, from the bank in a car. He could have used a car to get to the bank. Isn't that a sufficient link? I mean, there's no, there was no observation. I'm just asking you, wouldn't that, suppose somebody saw him pull up in a car? Well, that, that would be. I mean, and when he leaves the bank, instead of walking towards the car, he moseys on down to the bus stop. Right. But see, those are different facts from our case, because in our, in our case, there's absolutely no observation, no connection of the appellant to any car, either at the first bank robbery or at the second incident, an hour later. Except, except for they know that the, that the first bank robbery is about six miles away. And one hour away. And one hour away. And as argued in the district court. Not that it's one hour away, but that it would be an hour later. Yeah. An hour later. And someone can walk six miles in an hour. Do you want to reserve any time? I'm sorry. Yes, I did ask to reserve time, so I'll reserve my remaining one minute. Good morning, Your Honors. May it please the Court, David Kerman on behalf of the United States. There are six reasons why there was probable cause to search the defendant's car. First, on May 1st, at 2.30 p.m., the defendant robbed a farmer's and merchant's bank, and one hour later, he was spotted inside another bank, where he was arrested shortly outside. The distance of six miles and the time period of one hour suggests that a car was used. Second, the defendant was arrested. Well, according to counsel, he could have walked. Your Honor, absolutely, it's possible he could have walked. But it's reasonable. It's a reasonable circumstance. He could have walked. You know, Los Angeles, we walk all over, right? New life. It's a new day, right? Your Honor, I would disagree with that. I think a lot of activity these days. Yes, Your Honor. It's certainly possible he could have walked. He could have taken the bus. But the best inference and the most likely scenario was that he drove. Second, when he was arrested, he was found carrying the costume. Why was that a likely inference, if they didn't see the car? I think that's what he's arguing. Why is it? Why do you assume? Is it because it's L.A.? I mean, why do you assume that? Well, Your Honor, it's a good distance, six miles. It's within approximately an hour apart. The defendant is a large person. He's not. He doesn't look like an Olympic runner. There's a possible he could have walked, possible he could have taken the bus. But most likely, he drove a car. This is in Los Angeles in the Long Beach area. Your Honor, second, when he was arrested, he was found in possession of the costume that was used during the series of robberies, a white T-shirt, a purple golf hat, and in his pocket, there was a robbery note that was consistent with the note that was used in prior robberies. Give me the money. I don't want to shoot. Now, he had those things, but he didn't have things that the officers knew were taken from the first bank robbery, namely the bait bills and also the belief that he had a gun. So those items had to be somewhere. Had to be somewhere. Well, they could be anywhere, right? In a trash can, you know, temporarily. They could be hidden in a bush. Your Honor, it's certainly possible, and the officers aren't required to exclude every possibility, just that it's reasonably likely that they're going to be found in the car. And given the distance and given the fact that these items were missing, it's very likely that those items were going to be found in the car.  A green Lincoln was seen casing a bank. As it turns out, it was a different make, and the license plate was different, but it was the same make, which was Lincoln, and the same color, which was green. So the officers believed that the person doing the robbery was using a green car. Fourth, there was this April 7th... That one is curious to me. So somebody else was casing the bank and another green Lincoln? Your Honor, nobody knows. It was just everybody in Long Beach, I believe there was these crime information bulletins that was being sent out throughout the communities. There were bank robberies happening on every Friday, and a witness report is seeing a green Lincoln casing a bank. Who that was, was never determined. Whether or not the witness's identification was accurate or not, nobody knows. Whether or not it was the defendant's car or somebody else's car, the record simply doesn't have that information. But the information in the officer's mind is that there was this report of the green Lincoln. Your Honor, fourth, there is the issue of the April 17th robbery, which is similar to May 1st, in the sense that there was an attempted robbery at one location, and then an actual robbery at another location, and the officer, based on those two robberies, also believed that the person that was committing the robberies was using a car. Fourth, the car keys were in the defendant's hand. People tend to carry car keys in their hands when they're getting ready to go into the car. Fifth, after they arrested the defendant, they did a DMV check and confirmed that he owned a green Lincoln. And finally, there's the proximity of the car, which is approximately 250 feet from the bank. Now, I want to address counsel's point that nobody saw the robber get in and out of the car. Your Honors, this is essentially a professional bank robbery. He's robbing banks every Friday. A bank robber is not going to park their car in the parking lot of the bank where there's surveillance cameras. They're going to try to park the car out of the line of sight of the robbery, where they can walk away and get in the car unobserved. And that's exactly where the defendant's car was parked here. So, Your Honors, for those reasons, those... Could the officers see the car? I mean, so there was some element of, they clicked on the key fob and the car beeped or something? Yes, Your Honor. They took the defendant's key fob, which was in his hand, and they used the key fob to assist them in locating the car, which was approximately 200 feet from the defendant's location. With respect to that, Your Honor, they were also checking the DMV database for the type of car that the defendant owned. And that car would have been found really quickly with or without the key fob. So, Your Honor, based on those six facts, the government believes that there's easily probable cause for the automobile search of the defendant's car on that date. And believes that the district court's denial of the defendant's motion to suppress also was correct. And to Your Honor's point where the defendant walked out of the bank and moseyed out, and somehow that undercuts probable cause. Well, he walked into the bank and everybody stopped and looked at him. There was these robberies occurring on Friday. It was the same company, bank, farmers and merchants. Everybody recognized the defendant immediately. And the reports were that he took a piece of paper and stuffed it in his mouth and looked uncomfortable and walked out of the bank. So it's not as if he just left the bank. There was some indication that he left the bank due to all the bank tellers staring at him. And when you take these facts surrounding the car and then the couple that was a probable cause with the defendant, bank, the robberies occurring on a Friday, the date of the May 1st was a Friday, in and around the Long Beach area, similar descriptions of the person wearing similar clothes and all but one robberies, the probable cause for the rest of the defendant and for the search of the car is sufficient. And Your Honor, just to briefly address the point in the United States versus Edwards point, that case is completely irrelevant. In Edwards, there was a report of a robbery and the police responded. In the course of their investigation, they learned that there was no robbery. There was just this issue of people with dye stained money outside of the bank. Well, here, there's no question and there's no dispute in the record that there was a robbery at Farmers and Merchants Bank, the first Farmers and Merchants Bank at 230. So there's no question that the first robbery occurred. So this case is completely different than the Edwards case, which was discussed by the defendant. Let me ask you this, the same question I asked counsel this. Suppose it is a reasonable inference that he walked from the first bank to the second bank, just as a reasonable inference that he drove because he had the keys in his hand and the distance. And the district court drew one inference. What do we do with that? Your Honor, I think even assuming that it's possible that he walked or it's a reasonable inference that he walked, there still is probable cause. Probable cause only requires a fair probability that evidence of a crime is going to be found. Officers aren't required to exclude every other possible avenue. And in this case, even assuming he walked, when you take all the other facts and the totality of the circumstances, as this court is required to do, all those facts point to the likelihood that he used the car. I thought your answer might be that unless we were to conclude that the district court's factual findings were clearly erroneous. Yes, Your Honor. That we would be required to draw the inference that the district court did, conclude that it was reasonable. Yes, Your Honor, the government would also agree with that statement. Thank you. Your Honor, unless the court has any further questions, the government would submit. Mr. Walsh. Just in brief response to the court's last question, I think that the issue of probable cause is a mixed question of law and fact. And the court not only has to determine whether there's a reasonable resolution of the facts by the district court, but the court also has to make an independent de novo review concerning the constitutional reasonableness of the search under the Fourth Amendment. I think it's the case of the United States. Yeah, but we don't do pure fact-finding. That, I agree. So, but in the, I think the case is United States versus Ornelas. Right, that's right. And I thought I had cited it in the brief. The ultimate question is one of law. It is a question of law. And on that, legal questions are de novo determinations by the court. So if there's no further questions, then I'll submit the case. All right. Thank you very much, counsel. United States versus Jones is submitted.
judges: Wardlaw, Paez, Rawlinson